Good morning your honors, counsel. May it please the court, my name is Tom Mallers. I'm here on behalf of the appellant. Let me begin by, I have to say, offering an apology. I did not prepare the briefs in this case, but I note, and particularly with what Justice said earlier, many of the argument section does not have page citations. I apologize for that. I noticed that. Okay. I do apologize. That's the right direction. I also noticed, in getting ready for this, and I again have to apologize because I know I've been chastised about this by Justice Hoffman some time ago, there was no citation in the TTD section, argument section, as well. I can't account for that. If you wish me not to make an argument about that section, you'll have to let me know. The primary issue in this case is, I think we agree the manifest weight standard applies here, I don't think there's any question about that. I think the primary question here is whether the decision of the commission finding the petitioner was permanently and totally disabled is supported by the evidence or not. I looked at this file and I came to this, as I said, after the case was tried and decided. And what was interesting to me is it appears that counsel and the commission found that the petitioner was permanently and totally disabled on a medical basis, that being the petitioner presented evidence from a medical standpoint that he was not able to work in any capacity. I don't see that. I've gone through all the medical records and all the depositions, and there were three doctors that were deposed, Dr. Mercier, Dr. Chamel, and Dr. Chenow. Dr. Chenow, with the M, is the treating doctor. Dr. Chenow never renders an opinion that this man is permanently and totally disabled from work. He does say, he does say as early as 2003 and again in 2004, this man should go for pain treatment. Once the pain treatment is done, and that was with Dr. Escobar. Let me just interject there. As my understanding, didn't Dr. Chenow, C-H-E-N-E-L, determine that the claimant was unable to work in any capacity when he saw him on April 10th, 2003? He did at that time. But what he said is, I cannot impose or tell you what final restrictions or what final capabilities he may have until he undergoes an FCE. And he can't do that until one of two things happens. Either he has the treatment with Dr. Escobar, which he prescribed, or if enough time has elapsed and the petitioner comes back to him and says, I'm better, he has an FCE done at that time. In either case, he never finds him at maximum medical improvement. He never finds that he's permanently unable to return to work. What he says is, I can't really make that determination until he has an FCE. Well, Chenow says he can't work now. Correct. And his prognosis is poor. Without the He's not going to get better without pain management.  The employer refuses to pay for pain management. According to the petitioner's testimony. He never gets the pain management. Correct. So can't you infer from that that he's still in the same position? No, because Dr. Escobar I'm sorry. In addition to his testimony and so forth. Dr. Chenow himself says, I can't make that determination. Dr. Chenow says as of right now, he cannot go back to work. Maybe he's entitled to TTD benefits. Dr. Chenow also says whether and to what degree he can go back to work will be dependent upon an FCE, which I won't order until he gets his other treatment. If he chooses not to get that other treatment for whatever reason. Okay. I don't know if the employer didn't authorize that. All I know is that's what the petitioner said. Okay. But assuming that to be true, if he doesn't get that treatment, Dr. Chenow still says, I have to have an FCE before I can make a determination as to whether this man, he says, I'm concerned. And I think he's reasoned to be concerned. But go ahead. Well, you know, you get a situation where he is treating physician, is treating and examining physicians, you know, discuss what his situation is and what his prognosis is and both say he needs the pain management treatment. His treating physician says his prognosis is poor. I mean, he gives no opinion that anything is going to change without that treatment. The employer refuses to pay for it. He never gets it until he gets to the arbitration hearing. And then you want to come back and argue, you know, his own doctor said he'd be better maybe if he got pain management. Well, but I think that begs the question, too. His doctor said that he would be better if he had pain management. And that goes to, in part, the issue of medical care and medical treatment. Was the petitioner at maximum medical improvement at the time that he was examined by Dr. Mercier and found to be at maximum medical improvement and needed no further treatment according to what Dr. Chenelle said? That's a decision, in my opinion, that's a decision that should have been made by the arbitrator. I don't think we were at a point where this case was ready for a finding of permanent disability of whatever degree. I think we're at a point where a decision had to be made as are you going to get this treatment or not? And if you are, is it really? And he testified he didn't have any way to pay for it. Well, that's what he testified to. And also his doctor recommended, maybe it was Chenelle, said vocational rehabilitation. Dr. Chenelle, the IME doctor with the M, said he can go back to work now. He can probably, in his record, he says he can work four to six hours. In his testimony, he says he can probably work four hours. He can work sedentary duty. He can work sitting behind a computer. The petitioner says he never did that. That's not happening. Let me get back to my question. I'm sorry. There was a recommendation for vocational rehabilitation, right? They said this man should have vocational rehabilitation. That's what Dr. Chenelle said. Was it offered? Was it offered? No. Employer wouldn't pay for it. The employer wouldn't feel responsible for paying for it because their doctor would indicate he could go back to work full duty. Because their doctor said he was faking it all. Well, their doctor just said that he was able to go back to work full duty. I don't think that he said he was faking all of it. I think there were questions about malingering and part of his examination. Correct. But I think it was also based in part on the fact that this man had, in fact, gone back to work. Something earlier you said intrigued me, that you didn't think the state of this record was granting permanency determination. Is that correct? I didn't think what? I said the state of this record is not such that there should be any permanency determination. I mean, I So are you saying that this claimant is just really not even at MMI and should just be receiving PTD? I, no. I think two things. I think, number one, if the petitioner is going to make the statement, and I believe he may have done that by going to trial when he did and as he did, he's going to make the statement, I'm not going to get any further pain management treatment that my own doctor had prescribed, with Dr. Esserbar. Is that what he said? He didn't come in on an 8-8 petition. He didn't come in and say I want more treatment. I feel I can get more treatment and get better. He came in saying, decide all issues, including the extent of my injury. Okay? That's the petitioner's choice. He can choose not to have treatment. The question I think then you'd have to ask is, number one, is that refusal reasonable? It's not an invasive procedure. They're talking about pain management. And number two, how does that affect the degree of permanent disability? Those questions were never addressed. My own opinion in response to your question is, when he came in there, there had been a prescription from further medical care by his treating doctor. Okay? There had been an opinion by an examining doctor that that wasn't necessary. The decision should have been made by the arbitrator, does this man need additional treatment or not, and is it related? Then, if he thinks it's related, get the treatment. Can't the commission, though, draw reasonable inferences? You seem to be saying physician, he's unable to work at all now, in any capacity, unless A happens. Okay? The pain management, unless A happens. We know from the record A didn't happen. So you're saying, well, he didn't sustain his burden because nobody actually came in and said A didn't happen and why it didn't happen. Can't they draw inferences that he remains in the same condition without any type of management? I think the commission can always draw reasonable inferences. And I guess the question I have in response to your question is, is that really a reasonable inference? And by that, I mean, Mr. Holston was given a prescription for this care, chose not to get it. Maybe because the employer wouldn't pay for it. Maybe because his group insurance wouldn't pay for it, which they obviously paid for the things. Maybe they, who knows why. Okay? Let's assume the worst. Let's assume the employer said, we don't think we're responsible for this, so we're not paying for it. So what does he do? He does nothing. He does nothing. I don't think the employer is responsible for the commission to infer that a person is permanently and totally disabled because they chose not to get treatment that they feel is related and they didn't pursue it. I mean, I think there's some obligation on behalf of a claimant who comes in to you or comes in before the commission and says, I'm permanently and totally disabled. Well, your doctor says you need more treatment. Well, they won't pay for it. Well, get it. Go to your medical insurance, have a hearing, get the arbitrator to order it, get it. No, no, I'm not going to have any treatment. And I want to be found permanently and totally disabled because I didn't get the treatment that I think is related. I mean, there comes a point, I think, where a claimant has an obligation to do something to get the treatment that they feel is related. And then to take a, I mean, I can see where an employer could be penalized for not authorizing certain medical care. I could, I don't think this is the case, but I can see where that's possible. I can see where an employer would be penalized for delaying treatment or delaying lost time payments while the person is waiting for treatment. And those are sanctions that are available to the petitioner. Petitioner didn't do that. He did file a petition for penalty. So he ends up penalizing the petitioner, though, because if, in fact, he has this condition and you're saying, and the employer doesn't want to pay for the treatment and he can't afford the treatment, where does that leave him? Well, he's got to do something. Right. But he can't afford to do anything. He can do something. He's got a lawyer. He's got a lawyer that can bring him into court. I mean, he's got a lawyer who can go take the doctor's deposition, bring him into court, have the doctors testify to whatever they have to testify to, and have an arbitrator make a decision. That's what 19B is all about. And I know you can see from the record, my prior counsel tried for years to get this case tried, to get a decision. What about the commission decided absent that issue based on Camille's opinion or Chanel's opinion that he was permanently in total disability at that point? That was their conclusion. Period. That because, I'm not, I'm sorry. Why couldn't they have decided that based on Chanel's opinion that he was totally and permanently disabled absent anything further? Because Chanel himself said, in the course of his deposition, Chanel himself said, I can't tell you what his level of disability is until I have an FCE performed. That's what he said. So he doesn't have an opinion. He has, for prognosis, from a year and a half before he testified, he has a statement in that deposition testimony that if he comes back to me now a year later, since I've seen him, and he says I've improved, I'll do the FCE now. So obviously implicit in your position has to be that the commission obviously misread the import of Chanel and Camille's opinions, correct? I believe they misread Dr. Chanel's, misread the import of Dr. Chanel. I don't think they misread Dr. Chanel, but I don't think that they, I guess I'm not sure they got it all. Dr. Chanel said the man can go back to work. He said he might even be able to go back to work doing more. And he's probably at least What are you asking us to do? Are you asking us to vacate the decision, send it back to the commission until they better decide whether this man needs the suggested treatment, and if the answer to that is yes, to order the employer to pay for it, and then make a determination as to whether he's permanently and totally disabled after he gets the treatment? Well, I think that's one option. And I think the other option that I would offer to the Court is this. The Petitioner made his decision when he went to trial. The Petitioner decided that he wasn't going to pursue any further medical treatment. He wasn't going to take that action. Petitioner also decided that he wasn't going to do anything to look for work or to find work, even though his own, his examining doctor said he could do at least part-time work, even though he's doing part-time work. I mean, he's doing it voluntarily, but he's doing it. It's not like this guy is inactive and doing nothing. So I think that the other alternative for the Court is to say, I think that you're going to have to remand it back either along the lines that you said, or I think that you're going to have to remand it back and say to the Commission, you're going to have to make a finding as to permanent disability, less than permanent total disability, because he hasn't established it. Okay. And let me just turn around the argument you just made. The employer made a decision. The employer decided, we're not going to pay for pain management, we're not going to offer vocational rehabilitation, we're not going to do any of these things, and we're going to go to trial. And you did go to trial, and the arbitrator and the Commission found by the preponderance of the medical evidence that he's permanent total. Now, you have to argue that's against the manifest way to the evidence. That's exactly right. And the reason that we went to trial, the reason, at least I believe the reason that we went to trial, was because the medical evidence wasn't there to establish permanent and total disability. So I mean, it works both ways. Both sides decided to go ahead and trial the way it was now. The Commission determined that he was permanent total. Now, you convince us that that's not, that that is against the manifest way to the evidence. And I'm doing my very best. I do see what you're saying, but I think it's a little bit different. I mean, now we're talking about remanding and, you know. And I understand that. And I know that's the last thing that this Court wants to do and the Commission wants to hear. But I think that, I'm not cutting you off, but I think that, first of all, the question you asked me is different in the sense that we elected to go to trial once the depositions were done because we were trying to see what's our responsibility and what isn't. And if this doctor's treatment is going to be our responsibility, make it our responsibility. The petitioner said, no, no, no, rather than do that, I'm just going to have a hearing on all issues. Now, you've had other cases, and I'm sorry I'm not going to remember the name, but you've had other cases where just because someone chooses not to get further treatment doesn't mean that they get the benefit, and I use that word loosely, of increased permanent disability when it's reasonable treatment. Or just because they take a lower-paying job because that's the job they like doesn't mean they're entitled to a wage differential award just when other work is available. What am I supposed to do, say, have pox on both your houses, vacate it, and send it back, and tell the commission to do it over again? What I honestly believe, what my opinion is. Well, you want us to reverse it. I know what you want. Well, what I want you to, I don't think you can reverse it in its entirety. I mean, the man had an accident. He certainly had treatment. I think that he's got, you know, he's got issues. What I think is fair, and what I think is reasonable based on the record, is that there be an award for temporary total disability benefits that we haven't even discussed yet, that certainly doesn't go through February of 2006. I think that there should then be a finding by the commission as to whether or not, and I would say not, that the petitioner's chosen, he's not entitled to any further medical care. He made that decision by asking that nature and extent be an issue in this case, and that the commission then find an award as to the degree of permanent disability. That's what I think they need to do. Time is up, Julie. Time on rebuttal. Counsel, please. May it please the Court, and Mr. Mallers, I don't believe that the commission's decision is against the manifest way to the evidence. I think it is very squarely and overwhelmingly supported by the evidence, and I think the arbitrator had it right when he said that with regard to the petitioner's medical condition, when this condition requires him to remain off work indefinitely under the care of physicians, and the care and treatment appears likely to continue over a protracted period of time, an award of permanent and total disability is appropriate, and citing the ABBCE services case in support of that proposition. How do you respond to your opposing counsel's argument that the claimants on doctor seem to be deferring definitive opinion on permanency absent some type of further intervention, rehabilitation, or treatment, which never happened? He seems to be opining that there really is no definitive opinion in the record on that. What's your response? Well, I guess I would disagree. I think that Dr. Chenelle, who is the treating neurosurgeon, said on a number of occasions, I think the point was made earlier in, I believe, March and April of 2003, that Mr. Olson was incapacitated, was completely unable to work, and Does that mean he's definitely totally disabled, that language? Well, I think if you add to that, as far as what Dr. Chenelle said, the fact that the doctor said, well, the only thing that I could suggest is the pain management. If that is unsuccessful, then the next step would be to perform what he called a salvage operation, which he described as an instrumented fusion, which he was reluctant to do because he didn't, I guess, think the chances of benefit would be very much, and therefore it wouldn't be likely to offer him any help. But he never said that he could do any kind of work. And also Dr. Chenelle, the examining neurosurgeon, found basically that the petitioner was very little he could do other than maybe a part-time sedentary job where he wouldn't do any bending, lifting, pushing, pulling. He was limited to four hours a day and very limited walking and standing. And there would be, but he wouldn't be able to do that work without vocational rehabilitation, whether or not vocational rehabilitation would have been. That's what I'm saying. I mean, to be candid about it, did anybody here find, this is a permanent total, this guy's a permanent total, no question about it, the ball game's over. Nobody actually said that. So would it have to be your position that we, as the tribunal, can rely, that the commission can rely on reasonable inferences to draw that conclusion and we can affirm on that basis? Because there really is nobody in here that said no question, it's a permanent total, it's over, did they? Well, they didn't use those exact words, and I think I would go a little bit further than just reasonable inferences, because you've got a treating doctor who's seeing this man for five years, whatever the period of time is. He says basically it's a failed back syndrome. Dr. Chamel says the same thing. And what do you have on the other side? You have Dr. Mercier. And my position, which I stated in my brief, that none of Dr. Mercier's testimony forget about his credibility, which I think is questionable, but he didn't provide three of the six reports prior to his deposition. And, in fact, those same three reports that he didn't provide, which I only found out about when I went through his file in the deposition, those were not provided prior to either Dr. Chamel's deposition nor Dr. Chamel's deposition, which were both taken prior to Dr. Mercier's deposition. And my reading of this Court's decision in the City of Chicago case is when that happens, then the test – in other words, when these reports are withheld prior to other doctors' depositions, then the testimony of that witness, that physician, should not be admitted at all. The arbitrator barred the part about the reports that were not provided, though, right? He barred two of the three reports that were not provided, but I respectfully disagree with the arbitrator. Did you cross-appeal on that issue? I didn't, no. Okay. Is that before us? Well, I don't know. I think it ought to be, but I didn't try to cross-appeal. You're correct. So? Well, in addition to the testimony of the Chanel and Chamel, the medical records were introduced. Correct. I mean, and the Commission presumably considered what was in those medical records. I mean, so far, both attorneys have only talked about what they said in their deposition testimony. Well, you're quite correct, Your Honor, and the medical records, I think, support – I mean, there were a number of MRIs and a CT myelogram and, I believe, another test. They all showed recurrent disc herniation at at least two levels and probably nerve root entrapment at the level below. The disc herniation was L3-4 and L4-5 and then also problems at the level below that with nerve entrapment. So I think that there really isn't too much question that there wasn't any – I mean, Dr. Mercier's opinion that the men could do full duty was basically not based on anything in the medical records, just on what he claimed he found in the examinations, some of which were not provided prior to his deposition. So I would respectfully request that the decision of the Commission be affirmed. It's not against the manifest way of the evidence. Thank you, Counselor. Rebuttal, please. Your Honor, just to respond to something that you just asked, I'm sure the Commission looked at the entire record. But what the Commission based its decision on in terms of adopting the decision of the arbitrator was those two doctors. And that's why I focused on them. Well, the arbitrator specifically said, based on a preponderance of the medical evidence. And he didn't then parenthetically say, but I'm only considering the depositions of the doctors. I mean, the arbitrator said, based on a preponderance of the medical evidence, I find in permanent total. That was affirmed and adopted by the Commission. Yes. And I'm not disputing that at all. But I guess what I'm trying to point out is that the arbitrator's entire discussion about this issue was entirely focused on Dr. Schimel and Dr. Chinnell's testimony, and then as his last line was, and based on the preponderance of the evidence. Which is, again, not to say we didn't look at it. Basically, what the arbitrator is saying is, I'm making a decision of what his condition of ill-being is at the time of the arbitration hearing. Right. And based on what that is now, he's permanent total. Okay. Right? I mean, yes. I see what you're saying, yes. And that's what I think he did. And I don't think that the arbitrator had, I don't think it was a correct or reasonable inference for the arbitrator to draw that the petitioner was permanently and totally disabled under these circumstances, under these facts, when Dr. Chinnell himself said, I cannot say that he's at MMI when Dr. Chinnell testified. He said that he is not, I can't say that he's totally disabled. He didn't test for his lifting, et cetera. And he said, what I would have to do is either see him again, and if he's improved, have an FCE. And if he's not, get him to get that treatment. But I will not say that he's totally disabled at this time. You specifically wouldn't say that, going back to what you said over here. I think the other thing is, is it a reasonable inference for the arbitrator to draw that the petitioner is permanently and totally disabled when there's no medical evidence, no medical opinion, no medical support that the petitioner is permanently and totally disabled? Does the commission have to have an opinion of a doctor to make that determination? I don't think that the commission has to have a doctor say, he is permanently and totally disabled. They can determine that from the totality of the medical evidence. I think they may, if it's there. But I don't think it's there. I mean, in this case, you have one doctor saying he's not totally disabled. You have another doctor, his other examining doctor, saying he's not totally disabled. He may be, he is partially disabled, and I think all but Dr. Mercier agree with that. But I think he does say he's not totally disabled. He says he can go back to work. And then you do have Dr. Mercier saying he can go back to work. I'm not arguing, and I'm not here to argue for Dr. Mercier, but what I am saying is, this is the petitioner's burden. Right? We go back to that. This is his job to show. Okay? If he's not going to be medically totally disabled, permanently and totally disabled, then we get into the odd lot discussions that you've had pretty much all morning. I can just tell you that wasn't done here. I think you're all clear on that. So it comes down to this. Either he proved it or he didn't. And if he didn't, he didn't. You know? And there's nothing from a physician that I think can allow you to reasonably or allow the commission to reasonably infer that the petitioner is permanently and totally disabled. Is he permanently and partially disabled? There's plenty of evidence to support that. I'm not going to argue that at all. But there's no evidence to say that he is permanently and totally disabled. Thank you very much. Counsel, what is your name? My name is Tom Mallers. Mallers? Yeah. Like the building. No relation. Mallers? Mallers, yeah.  You should hopefully have my appearance in there somewhere. Thanks. The court will take the matter under divine predisposition. We'll stand in recess until 1.30.